IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

BANC OF AMERICA LEASING &
CAPITAL LLC,

       Plaintiff,

v.                                  Civil Action No. 4:05cv90

RICHARD J. HAVEL,

and

DIANA M. HAVEL,

       Defendants.

## OPINION AND ORDER

This matter was referred to the undersigned United States Magistrate Judge by order dated August 11, 2005, and with the consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.

## I. PROCEDURAL BACKGROUND

Plaintiff, Banc of America Leasing & Capital LLC ("Banc of America Leasing"), brought the instant lawsuit against Defendants, Richard J. Havel ("Mr. Havel") and Diana M. Havel ("Mrs. Havel") (collectively "the Havels"), to recover on a default judgment against Mr. Havel entered on Banc of America Leasing's behalf in September 2004. Banc of America Leasing alleged that a gift by Mr. Havel of his interest in proceeds from the sale of property he owned with Mrs. Havel, as tenants by the entireties, at 444 Tyler Street in Williamsburg, Virginia ("Tyler Street property"), was void to Banc of America Leasing as a creditor of Mr. Havel. Mr.

Havel made the gift in February, 2003.  Mrs. Havel used the proceeds from the sale of the Tyler Street property to purchase a residence solely in her name at 124 Holly Hills Drive in Williamsburg, Virginia ("Holly Hills property").

Banc of America Leasing filed the instant complaint, naming Mr. Havel and Mrs. Havel as defendants, in this Court on May 23, 2005.  (Document No. 1).  Because there is complete diversity of citizenship between the parties, and because the amount in controversy exceeds $75,000, this Court has proper jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  In the complaint, Banc of America Leasing alleged in count one that as a petitioning creditor under Va. Code Ann. § 55-82, Banc of America Leasing is entitled to a lien on Mr. Havel's interest in the proceeds from the sale of the Tyler Street property.

On June 3, 2005, Banc of America Leasing filed an amended complaint.  (Document No. 4).  The amended complaint incorporated count one of the initial complaint and asserted two additional counts.  In count two, Banc of America Leasing alleged it is entitled to a constructive trust on the Holly Hills property by tracing Mr. Havel's interest in the proceeds from the sale of the Tyler Street property through Mrs. Havel to the Holly Hills property.  In count three, Banc of America Leasing asserted a lien on the Holly Hills property to the extent Mr. Havel's interest in the proceeds from the sale of the Tyler Street property was used to

2

purchase the Holly Hills property.

The Havels filed a joint answer to the amended complaint on July 12, 2005. (Document No. 7). In their answer, the Havels asserted that because the Tyler Street property was held by them as tenants by the entireties, the proceeds from that sale of the property likewise were held as tenants by the entirety. Further, since Mrs. Havel was not indebted to Banc of America Leasing, the entire proceeds from the sale were exempt from Banc of America Leasing's claims. Finally, according to the Havels, Banc of America Leasing suffered no prejudice due to the transfer of Mr. Havel's interest in the proceeds because Banc of America Leasing had no claim in the proceeds in the first instance.

On January 17, 2006, the parties stipulated to certain facts in the case. (Document No. 12). On January 26, 2006, the parties submitted a letter to the Court requesting cancellation of the final pretrial conference and an indefinite continuance of the trial. The parties proposed, in lieu of trial, the Court permit them to submit cross-motions for summary judgment. In short, the parties agreed that no material facts in the case remained in dispute, and the case is ripe for summary disposition. On January 31, 2006, the Court ordered the parties to file cross-motions for summary judgment. (Document No. 13). On February 13, 2006, Banc of America Leasing and the Havels each filed cross-motions for summary judgment, along with supporting memoranda. (Document Nos.

3

15, 16).

In its opening brief, Banc of America Leasing asserted that the gift by Mr. Havel of his interest in the proceeds from the Tyler Street property to Mrs. Havel was void to Banc of America Leasing under a strict interpretation of Va. Code Ann. § 55-81. Further, Banc of America Leasing alleged, since Mr. Havel's gift was void as to Banc of America Leasing, it holds a lien on Mr. Havel's one-half interest in the proceeds from the sale of the Tyler Street property. Finally, in lieu of imposing a constructive trust on the Holly Hills property, as it requested in its amended complaint, Banc of America Leasing requested the Court to order Mrs. Havel to return to Mr. Havel his one-half of the proceeds from the sale of the Tyler Street property. Banc of America Leasing asked for the Court to subject these proceeds to a lien in its favor equal to the balance due under the judgment it had against Mr. Havel in the first instance.

In their opening brief, the Havels asserted that although the proceeds from the sale of the Tyler Street property were paid only to Mrs. Havel, by virtue of the gift to her by Mr. Havel, these proceeds maintained their character as tenants by the entirety property absent an agreement or understanding that the character of the property was to be severed. As such, the Havels alleged, Banc of America Leasing was not prejudiced by Mrs. Havel receiving Mr. Havel's one-half interest in the proceeds and should not be allowed

4

to set aside this transfer.

Banc of America Leasing filed its Brief in Opposition to the Defendants' Motion for Summary Judgment on February 24, 2006. (Document No. 17).   In its opposition brief, Banc of America Leasing argued that the Havels intended and agreed to sever the entireties tenancy of the proceeds from the sale of the Tyler Street property.   As such, by a strict application of Va. Code Ann. § 55-81, Banc of America Leasing alleged it was entitled to the relief it now seeks.

The Havels filed their Brief in Opposition to the Plaintiff's Motion for Summary Judgment on February 27, 2006.   (Document No. 18).   In their opposition brief, the Havels reasserted their position that Mr. Havel's gift of his interest in the proceeds from the sale of the Tyler Street property to Mrs. Havel did not destroy the entireties character of the property.   Further, the Havels asserted that the statutory language of Va. Code Ann. § 55-81 could not be construed to override the established common law of Virginia as it relates to tenants by the entirety.

After a review of the pleadings and memoranda submitted by the parties, the attached exhibits, and the applicable case law, this Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment.   This opinion and order follows.

## II. <u>MOTION FOR SUMMARY JUDGMENT STANDARD</u>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party."  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986).  Facts are deemed material if they might affect the outcome of the case.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).  In other words, the moving party's submission must foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences favorable to the non-movant.  <u>Id.</u>

In deciding a summary judgment motion, the court must view the record as a whole and in the light most favorable to the non-moving party.  <u>Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.</u>, 763 F.2d 604, 610 (4th Cir. 1985).  "If, however, 'the evidence is so one-sided that one party must prevail as a matter of law,' we must affirm the grant of summary judgment in that party's favor."  <u>O'Connor v. Consol. Coin Caterers Corp.</u>, 56 F.3d 542, 545 (4th Cir. 1995) (quoting <u>Anderson</u>, 477 U.S. at 251-52).  Moreover, summary judgment must be granted where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear

6

the burden of proof at trial," <u>Celotex</u>, 477 U.S. at 322, as the non-moving party is required to "set forth specific facts showing that there is a genuine issue for trial" with respect to that element.  Fed. R. Civ. P. 56(e).

When confronted with cross-motions for summary judgment, "the standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions." <u>Taft Broad. Co. v. United States</u>, 929 F.2d 240, 248 (6th Cir. 1991).  "[T]he Court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" <u>Rossignol v. Voorhaar</u>, 316 F.3d 516, 523 (4th Cir. 2003) (quoting <u>Philip Morris Inc. v. Harshbarger</u>, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).  In doing so, the court will look first to the burden of proof that each party would bear on an issue at trial, and then require that party to affirmatively establish a genuine issue of material fact as to that issue.  <u>Santaella v. Metro. Life Ins. Co.</u>, 123 F.3d 456, 461 (7th Cir. 1997).

### III.  <u>FACTUAL BACKGROUND</u>[1]

In 1999, Mr. Havel entered into a lease agreement with Banc of

---

[1]Many of these facts are taken directly from the parties' agreed-upon stipulation of facts (Document No. 12) and the Havels' answers to Banc of America Leasing's amended complaint (Document No. 7).

America Leasing's predecessor[2] in which Mr. Havel made a personal guaranty of personal property.[3]   Mr. Havel's "Guaranty by Individual" was dated March 9, 1999.   At the time this personal guaranty was signed, Mr. Havel lived in Lafayette, Indiana.

In March 2000, the Havels purchased a residence at 444 Tyler Street in Williamsburg, Virginia ("Tyler Street property").   The deed granted the property to Mr. Havel and Mrs. Havel as tenants by the entirety with the right of survivorship as at common law.[4]

On February 14, 2003, the Havels sold the Tyler Street property for $375,000.00.   The proceeds from this sale, made payable to the Havels, were $359,144.85.[5]   Mr. Havel was insolvent for purposes of Va. Code Ann. § 55-81,[6] both before and after the February 14, 2003 sale of the Tyler Street property.

---

[2]Banc of America Leasing is the successor in interest to NationsCredit Commercial Corporation, the company with whom Mr. Havel signed the lease agreement.

[3]The guaranty related to a personal property lease to Heartland Faucet, Inc.

[4]This deed was recorded with the Clerk of the Circuit Court for the City of Williamsburg and County of James City, Virginia, on March 1, 2000.

[5]According to the HUD Settlement Statement, dated February 14, 2003.

[6]Va. Code Ann. § 55-81 states, in pertinent part, "Every gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law . . . by an insolvent transferor, or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts shall have been contracted at the time it was made, . . ."

The proceeds from the sale of the Tyler Street property were held by the Havels as tenants by the entireties with the right of survivorship as at common law for purposes of Va. Code Ann. § 55-20.2,[7] as well as under the common law of Virginia, immediately after the closing of the sale.  After the closing of the sale of the Tyler Street property, Mr. Havel transferred his interest in the proceeds from this sale to Mrs. Havel.[8]  Prior to this transfer, these proceeds were exempt from the claims of creditors because those funds maintained their character as tenants by the entireties property.

Also on February 14, 2003, Mrs. Havel used the proceeds from the sale of the Tyler Street property towards the purchase of her current residence, at 124 Holly Hills Drive in Williamsburg,

---

[7]Va. Code Ann. § 55-20.2 states, in pertinent part, "A. Any husband and wife may own real or personal property as tenants by the entireties. Personal property may be owned as tenants by the entireties whether or not the personal property represents the proceeds from the sale of real property. . . . B. Any property of a husband and wife that is held by them as tenants by the entireties and conveyed to their joint revocable or irrevocable trusts, or to their separate revocable or irrevocable trusts, shall have the same immunity from the claims of their separate creditors as it would if it had remained a tenancy by the entirety, so long as (i) they remain husband and wife, (ii) it continues to be held in the trust or trusts, and (iii) it continues to be their property."

[8]For purposes of Va. Code Ann. § 55-81, supra, Mr. Havel received no consideration deemed valuable in law for his transfer of his interest in the proceeds from the sale of the Tyler Street property to Mrs. Havel.

Virginia ("Holly Hills property"), for the sum of $525,000.00.[9] Mrs. Havel is the sole owner of the Holly Hills property.[10] Mr. Havel lives at the Holly Hills property with Mrs. Havel.

On September 24, 2004, Banc of America Leasing had a default judgment entered on its behalf[11] against Mr. Havel for the sum of $131,313.28.[12] The judgment arose from Mr. Havel's default on the personal guaranty of personal property he signed on March 9, 1999. At no time has Mrs. Havel been indebted to Banc of America Leasing for the debt that caused the default judgment to be entered against Mr. Havel.

On May 19, 2005, Banc of America Leasing instituted the instant lawsuit against Mr. Havel and Mrs. Havel. After Banc of America Leasing amended its complaint, the Havels answered by asserting that Banc of America Leasing suffered no prejudice from Mr. Havel's transfer of his interest in the proceeds from the sale of the Tyler Street property because Banc of America Leasing had no claim in the proceeds in the first instance. On February 13, 2006, Banc of America Leasing and the Havels filed cross-motions for

---

[9]According to the HUD Settlement Statement, dated February 14, 2003.

[10]According to the deed recorded with the Clerk of the Circuit Court for the City of Williamsburg and County of James City, Virginia, on February 18, 2003.

[11]Judgment entered by this Court in Civil Action No. 4:04cv66.

[12]Judgment consisted of $95,411.60 principal and $35,901.68 interest to September 23, 2004.

summary judgment.

The question presented to this Court in deciding the instant cross-motions for summary judgment is whether Banc of America Leasing can void Mr. Havel's transfer of his interest in the proceeds from the sale of the Tyler Street property, under the strict liability imposed by Va. Code Ann. § 55-81, or whether this transfer was free from liens or claims of creditors because of its entireties character.  For the following reasons, this Court FINDS that Banc of America Leasing cannot set aside such a gift of property under these circumstances, and the Court GRANTS the Havels's Motion for Summary Judgment and DENIES Banc of America Leasing's Motion for Summary Judgment.

## IV. <u>TENANTS BY THE ENTIRETY</u>

The common law in Virginia makes it clear that if property is held as tenants by the entireties, such property is exempt from the "claims of creditors against husband or wife alone." <u>Vasilion v. Vasilion</u>, 192 Va. 735, 740 (1951).  Further, it is clear in Virginia that "in the absence of an agreement or understanding to the contrary, the proceeds derived from a voluntary sale of real estate held by the entireties are likewise held by the entireties." <u>Oliver v. Givens</u>, 204 Va. 123, 126-27 (1963).  <u>See also</u> <u>In re Ballard</u>, 65 F.3d 367, 370 (4th Cir. 1995).  Finally, "there is no reason why [property held by husband and wife as tenants by the entireties] cannot be . . . conveyed by the husband and wife to

11

himself or herself [free from liens or claims of creditors]."
<u>Vasilion</u>, 192 Va. at 743.

In analyzing a tenancy by the entirety, "the incidents of
time, title, possession and interest must unite." <u>In re McCullen</u>,
244 B.R. 73, 76 (1999) (quoting <u>Pitts v. United States</u>, 242 Va.
254, 258 (1991))[13]. In Virginia, "an entireties estate cannot be
severed by either spouse by his or her sole act, and neither spouse
may convey or dispose of any part of such estate to effect such a
severance." <u>McCullen</u>, 244 B.R. at 77. <u>See also</u> <u>Vasilion</u>, 192 Va.
at 740; <u>In re Nagel</u>, 298 B.R. 582, 586 (2003). If the parties have
an agreement or understanding "to sever the entireties tenancy upon
the sale of the real property, then under Virginia law the proceeds
from the sale will not be held by the entireties." <u>McCullen</u>, 244
B.R. at 77. <u>McCullen</u> and <u>Oliver</u> are particularly instructive of
what actions taken by parties demonstrate an agreement and
understanding to sever the entireties tenancy.

The bankruptcy court in <u>McCullen</u>, 244 B.R. at 79, found an
agreement and understanding between the husband and wife, who held
property as tenants by the entireties, to sever the entireties
estate. When Mrs. McCullen filed for bankruptcy, she claimed an
exemption for the funds she received from her one-half portion of

---

[13]In <u>Pitts</u>, the United States Court of Appeals for the Fourth
Circuit certified a question of law to the Supreme Court of
Virginia as to whether notes without survivorship received by a
married couple in exchange for real property held as tenants by the
entireties were held as tenants by the entireties.

the proceeds from the sale of the tenants by the entirety property. Id. at 75. Mrs. McCullen was separated from Mr. McCullen at the time of filing, but they eventually reconciled. The trustee in bankruptcy filed an objection to the debtor's tenants-by-the-entirety exemption. Id.

The McCullens were married in 1967 and had separated from time to time during the marriage, but were never divorced. Id. In 1987, the McCullens purchased property as tenants by the entireties and owned the property in this capacity until it was sold. Id. In 1990, the McCullens executed a property settlement agreement that made each individual spouse responsible for his or her respective debts. Id. In 1999, the McCullens sold the property they owned as tenants by the entireties. The McCullens both testified that it was their understanding and intention to split the proceeds from the sale of the property and that either party could do what they chose to with their share of the proceeds. Id. The proceeds were distributed to the McCullens in the form of two checks, one payable to the husband, the other payable to the wife. Id. The husband used his check to pay off his personal debts; the wife used her check to pay off her personal debts. Id. The McCullen court found that, although the proceeds from the sale were received sometime after the settlement, this was unimportant because the intent of the parties as to the disposition of the proceeds was known prior

13

to the receipt of the funds.[14]

In McCullen, the court noted several indicia of the McCullens' intent to sever the entireties character of the property upon the sale of the property. Id. at 77. First, the proceeds from the sale were payable in two checks, with one check going to the husband and the other check going to the wife. Id. Second, the husband used his check to pay his debts and the wife used her check to pay her debts. Id. Third, the 1990 property settlement agreement executed by the McCullens showed that husband and wife were individually responsible for their respective debts.[15] Id. Though the McCullens never divorced, their behavior indicated to the court their intention to have terminated their entireties tenancy. Id. at 78.

---

[14]In McCullen, the parties testified that it was their understanding to split the proceeds from the sale of the property equally. This differs from the facts in In re Nagel, 298 B.R. 582 (2003), supra, in which a husband and wife, who sold property they owned as tenants by the entirety, had agreed to split the proceeds from the sale of the entireties property, but had not agreed on the specific amount that would be distributed to each of the parties. Nagel, 298 B.R. at 585. In Nagel, the Nagels held these proceeds in escrow pending agreement on the amount each spouse would receive. While the proceeds were in escrow, Mrs. Nagel filed for bankruptcy. Id. Because the Nagels could not agree on how to split the proceeds and the proceeds remained in escrow, the court held that the Nagels did not have an agreement to terminate the entireties-tenancy character of these proceeds. Id. at 589.

[15]The McCullen court specifically noted that the language of the property settlement agreement executed by the McCullens influenced its holding that it was the McCullens' intent and understanding not to hold the proceeds from the sale of the property in a tenancy by the entireties. McCullen, 244 B.R. at 78.

In contrast, the Supreme Court of Virginia , in <u>Oliver</u>, 204 Va. at 126-27, found that there was no agreement or understanding between the husband and wife so as to sever the tenancy-by-the-entireties estate upon the sale of their home.  Mr. Oliver filed for bankruptcy in 1960.  <u>Id.</u> at 123.  It was alleged by Mr. Oliver's trustee in bankruptcy that less than twelve (12) months before Mr. Oliver filed for bankruptcy, the Olivers sold property that they owned as tenants by the entirety.  <u>Id.</u> at 124.  After this sale, the trustee alleged, the entire proceeds were paid to Mrs. Oliver.  <u>Id.</u>  Finally, the trustee alleged that this transfer of proceeds by Mr. Oliver to Mrs. Oliver effected a fraud on Mr. Oliver's creditors.  <u>Id.</u>  The trustee argued that the transaction should be set aside and Mr. Oliver's one-half share should be paid to the trustee.  <u>Id.</u>

In 1954, the Olivers purchased real estate as tenants by the entireties and owned this property in this capacity until it was sold in 1959.  <u>Id.</u> at 124-25.  The Olivers were never separated during the time they held the property as tenants by the entireties.  <u>Id.</u>  On July 2, 1959, Mrs. Oliver received a check consisting of the proceeds from the sale of the entireties property.  <u>Id.</u>  On the same day, Mrs. Oliver used these proceeds to purchase another piece of property.  <u>Id.</u>  In effect, Mr. Oliver transferred his interest in the proceeds from the sale of the

entireties property to Mrs. Oliver.[16]   <u>Id.</u>

The <u>Oliver</u> court only considered two issues.  First, whether the proceeds from the sale of the entireties property owned by the Olivers retained its entireties character.  <u>Id.</u> at 124.  Second, whether the receipt by Mrs. Oliver of the entire net proceeds from the sale of the entireties property constituted a fraudulent conveyance by Mr. Oliver to her of his interest in the proceeds. <u>Id.</u>

In deciding this issue of first impression in Virginia, the <u>Oliver</u> court held that in Virginia, "personal property as well as realty may be held by a husband and wife as tenants by the entireties."  <u>Id.</u> at 126.  While agreeing with the trial court's holding that the Oliver's sale of the real property terminated the entireties character of <u>that real property</u>, the court found that it does not follow that the entireties character does not exist in the <u>proceeds from</u> the sale of the entireties property.  <u>Id.</u>  The court held that, "in the absence of an agreement or understanding to the contrary, the proceeds derived from a voluntary sale of real estate held by the entireties are likewise held by the entireties."[17]   <u>Id.</u>

---

[16]The <u>Oliver</u> court specifically noted that it was "not here concerned with whether the trustee in bankruptcy may subject the latter property to the claims of the creditors of [Mr.] Oliver." <u>Id.</u> at 125.  The <u>Oliver</u> court was only concerned with whether the trustee was entitled to a personal judgment against Mrs. Oliver for Mr. Oliver's share of the proceeds that he transferred to her.  <u>Id.</u>

[17]<u>See also</u> <u>Nagel</u>, 298 B.R. at 588 ("<u>Oliver</u> . . . instructs that proceeds from the voluntary sale of real property held by a husband

at 126-27.   Therefore, the court determined that the Olivers held
the proceeds from the sale of entireties property as entireties
property.   Id. at 127.   Because the proceeds retained its
entireties character, Mr. Oliver's interest therein was immune from
the claims of his creditors.   Id.   Thus, the gift by Mr. Oliver to
Mrs. Oliver of his interest in the proceeds from the sale of
entireties property was found not to defraud the rights of Mr.
Oliver's creditors.   Id.   "This is so," the court held, "for the
obvious reason that creditors are not prejudiced by a gift of
property which is exempt from their claims."   Id.

In McCullen, Mrs. McCullen argued that in Oliver the court
held that proceeds can retain their entireties character even if
they only go to one of the parties and if they are used to buy
property for only one of the parties.   McCullen, 244 B.R. at 78.
Because Oliver so held, she argued, the fact that the McCullens
split their proceeds from the sale of their entireties property did
not translate into a finding that their entireties tenancy was
terminated upon the sale.   Id.

The McCullen court did not disagree with that rationale, but
distinguished the holding in Oliver from Mrs. McCullen's argument.
"In the absence of an agreement or understanding to the contrary,

---

and wife as tenants by the entirety . . . automatically continue to
be held by them as tenants by the entirety . . . until there is 'an
agreement or understanding to the contrary.'") (citing Oliver, 204
Va. at 126-27) (other citations omitted) (emphasis added).

the proceeds derived from a voluntary sale of real estate held by the entireties are likewise held by the entireties." Id. (quoting Oliver, 204 Va. at 126-27.)   The McCullen court noted that in Oliver the parties showed no evidence of an agreement or understanding contrary to the rule that proceeds derived from the sale of entireties property are likewise held by the entireties. Id.  The court observed that in Oliver, the fact that the wife used the proceeds to buy land deeded only to her did not evidence an agreement or understanding to sever the entireties tenancy.  Id. In contrast, the court found an agreement or understanding to sever the tenancy by the entireties in McCullen because, inter alia, the McCullens both testified that they agreed to split the proceeds from the sale of the entireties property and they agreed that neither husband nor wife had control over the other individual's proceeds.  Id.

In the instant case, Banc of America Leasing is attempting to set aside the transfer of the entireties interest of its insolvent debtor, Mr. Havel, as opposed to the trustee in bankruptcy seeking to set aside a fraudulent conveyance, as was the factual scenario in Oliver and McCullen.  While Oliver and McCullen involved the debtor having filed for bankruptcy, the principles governing the treatment of tenants-by-the-entireties property under Virginia law are applicable here.  It is not disputed that the Havels owned the Tyler Street property as tenants by the entirety.  Banc of America

Leasing asserts, however, that the Havels demonstrated an agreement and understanding to sever their tenancy by the entireties based on the fact that "[the Tyler Street] property . . . [unquestionably] was held as tenancy by the entirety was [also] equally unquestionably transmuted into property held only by Mrs. Havel as a result of her and Mr. Havel's actions." Brief in Opposition of Defendant's Motion for Summary Judgment, at 3-4.  The Havels argued that the mere fact of Mr. Havel's transfer of his interest in the proceeds from the sale of the Tyler Street property to Mrs. Havel evidenced no such agreement or understanding to sever their entireties tenancy.  As such, these proceeds are exempt from Banc of America Leasing's claims.

Accordingly, this Court must address whether there was an agreement or understanding of the parties to sever the tenancy by the entireties.  To that end, the Court will examine the parties' respective positions regarding any indicia of intent to sever the tenancy by the entireties.

## V. BANC OF AMERICA LEASING'S ARGUMENTS

Banc of America Leasing claimed in its memorandum in support of its motion for summary judgment that the language of Va. Code Ann. § 55-81 is clear and unambiguous.  Banc of America Leasing alleged that, because Mr. Havel made a gift of his interest in the proceeds from the sale of the Tyler Street property, because he was insolvent both before and after the February 14, 2003 sale of that

19

property, and because Banc of America Leasing was his creditor at the time of the gift, Mr. Havel's transfer of his interest in the proceeds from the sale was void to it as a matter of law.

While Banc of America Leasing acknowledged that it had no right to seek recovery against the proceeds from the Tyler Street property while that property was held by the Havels as tenants by the entireties, it argues that because Mr. Havel transferred his interest in the exempt property, he ended the entireties tenancy of that property. Therefore, according to Banc of America Leasing, by ending the entireties tenancy of that property, Mr. Havel is deemed to have transferred $179,572.42[18] to Mrs. Havel as a gift. Banc of America Leasing further asserted that, according to Va. Code Ann. § 55-81, this gift was void as to it as an existing creditor and that Banc of America Leasing is entitled to a lien on its portion of those proceeds. Finally, Banc of America Leasing requested the Court direct Mrs. Havel to return to Mr. Havel the $179,572.42 that Mr. Havel contributed towards the purchase of the Holly Hills property, subject to the aforementioned lien, and to have Mr. Havel pay Banc of America Leasing the remaining balance due on the judgment against him.

In its opposition brief, Banc of America Leasing argued that Oliver is not applicable to the instant case. Banc of America

---

[18]Exactly one-half of the proceeds from the sale of the Tyler Street property.

Leasing argued that while <u>Oliver</u> dealt with a motion for judgment as a matter of law, Banc of America Leasing seeks an equitable remedy in the form of a lien on the proceeds.  Banc of America Leasing asserted that its equitable claims, if raised during the time frame in which <u>Oliver</u> was decided, would necessarily have been raised on the equity side of the court.  As such, Banc of America Leasing asserts its claims are distinguishable from <u>Oliver</u>.

Banc of America Leasing further argued that even if <u>Oliver</u> is applicable, it is further distinguishable from the instant case because the plain language of Va. Code Ann. § 55-81 calls for strict liability.[19]  Banc of America Leasing asserted that the plain language of Va. Code Ann. § 55-81 requires the Court to find the transfer of Mr. Havel's interest in the entireties proceeds void to Banc of America Leasing as a matter of law.  Va. Code Ann. § 55-81 states that, "[e]very gift, . . . which is not upon consideration deemed valuable in law . . . by an insolvent transferor . . . shall

---

[19]Banc of America Leasing also raised an argument that the case is distinguishable from <u>Oliver</u> because the claim in <u>Oliver</u> arose from a trustee suing a debtor's spouse, under the Bankruptcy Act § 67(d)(2), whereas the instant case arose from a creditor suing a debtor and his spouse under Virginia's fraudulent transfer law, specifically Va. Code Ann. § 55-81.  The Court finds this argument unpersuasive because the fundamental issue to be decided here, as it was in <u>Oliver</u>, is whether a creditor can set aside a transfer of an interest in an entireties estate.  Whether the action surrounding the creditors' claim is brought forth under federal bankruptcy law or Virginia transfer law, it does not fundamentally change the characterization of the entireties estate as it relates to proceeds from the sale of the entireties estate or transfer of interests in such proceeds.

be void as to creditors whose debts shall have been contracted at the time it was made, . . ." See also supra note 6. Insofar as Mr. Havel made the gift of his interest in the entireties proceeds when he was insolvent, and Banc of America Leasing was his creditor at the time of the gift, Banc of America Leasing alleged that these undisputed facts voided the transfer because of the strict liability established by Va. Code Ann. § 55-81. Additionally, Banc of America Leasing claimed that the "no harm, no foul" defense offered by the Havels, that Banc of America Leasing is not prejudiced by a gift of property that is exempt from its claims, is not a valid defense under Va. Code Ann. § 55-81. Banc of America Leasing cites Tavenner v. Smoot, 257 F.3d 401 (2001), as the controlling authority for the principle that "no harm, no foul" does not apply to Va. Code Ann. § 55-81.[20]

## VI. **THE HAVELS' ARGUMENTS**

The Havels cited Oliver, asserting that although the proceeds from the sale of the Tyler Street property were paid only to Mrs.

---

[20]The facts of Tavenner v. Smoot, 257 F.3d 401 (2001), are distinguishable from the instant case. Tavenner concerned funds received in a settlement for a personal injury lawsuit, which the debtor held solely. Id. at 405. He transferred these funds to a shell corporation that was controlled by him and his family. Id. Because of the clear differences between the exempt settlement money owned solely by the husband in Tavenner and the exempt entireties property owned by husband and wife in the instant case, as well as the previously mentioned case law that recognizes the "no harm, no foul" defense in entireties cases (because absent the transfer, the creditors could not have reached the property, thus then transfer did not harm the creditors in any way) , this Court finds Tavenner is not applicable to the instant case.

22

Havel, these proceeds still maintained their character as tenants-by-the-entirety property absent an agreement or understanding that the character of the property was to be severed.  The Havels claimed that though the proceeds went to just one spouse, this does not terminate the tenants-by-the-entireties nature of the proceeds. Further, the Havels alleged that setting aside the transaction would put Banc of America Leasing in a better position than it would have been in had the Tyler Street property never been sold. As such, the Havels alleged, Banc of America Leasing could not have been prejudiced by Mrs. Havel receiving Mr. Havel's one-half interest in the proceeds and Banc of America Leasing should not be allowed to set aside this transfer.

In their opposition brief, the Havels argued that because Mr. Havel's gift of his interest in the proceeds from the sale of the Tyler Street property to Mrs. Havel did not destroy the entireties character of the property, these proceeds retained their exempt tenancy-by-the-entireties character.  Additionally, the Havels asserted that this situation is not analogous to the parties getting a divorce, whereby the parties by definition can no longer have a tenancy by the entireties.  The Havels cite <u>Nagel</u>, 298 B.R. at 586, for the proposition that proceeds from the sale of entireties property still retain the entireties character even when the couples are separated.  Further, the Havels asserted that the statutory language of Va. Code Ann. § 55-81 should not be construed

23

to override the established common law of Virginia as it relates to tenants by the entirety.

## VII. **MERITS ANALYSIS**

Banc of America Leasing's argument is counter to the established law of Virginia dealing with tenants by the entireties. In the instant case, Mr. Havel transferred his interest in the exempt proceeds from the sale of the Tyler Street property to his wife, making it analogous to the situation in <u>Oliver</u>, <u>supra</u>. Banc of America Leasing admits that the proceeds derived from the sale of the Tyler Street property that was held by the Havels as tenants by the entireties are likewise held by the entireties, but asserts that the Havels understood and agreed to sever their entireties tenancy by Mr. Havel's transfer of his one-half interest in the proceeds from this sale to Mrs. Havel. Yet, apart from the mere fact that the transfer occurred, Banc of America Leasing points to no evidence that the Havels intended to sever their tenancy by the entireties in these proceeds.

"In the absence of an agreement or understanding to the contrary, the proceeds derived from a voluntary sale of real estate held by the entireties are likewise held by the entireties." <u>Oliver</u>, 204 Va. at 126-27. In <u>McCullen</u>, the court found an agreement by the parties to sever their tenancy by the entireties, which the court recognized was contrary to the general rule that proceeds derived from the sale of entireties property are likewise

24

held by the entireties.  The indicia of this agreement was found because the proceeds from the sale of entireties property were payable in two checks, with one check going to the husband and the other check going to the wife; the husband used his check to pay his debts and the wife used her check to pay her debts; and a property settlement agreement executed by the McCullens showed that the husband and wife were individually responsible for their respective debts.  <u>McCullen</u>, 244 B.R. at 77.  Further, the <u>McCullen</u> court noted that the McCullens' property settlement agreement, and their many separations throughout their marriage, influenced its holding that it was the McCullens' intent and understanding not to hold the proceeds from the sale of the property in a tenancy by the entireties.  <u>Id.</u> at 78.

The instant case does not reveal any indicia of intent on the part of the Havels to sever their tenancy be the entireties.  Here, the Havels bought the Tyler Street property as tenants by the entireties in 2000.  The Havels sold the Tyler Street property as tenants by the entireties in 2003.  The Havels never were separated during this time period and did not create any property settlement agreements that indicated an intent to individualize the debts of either party.  Upon the closing of the sale of the Tyler Street property, the proceeds of the sale went directly and solely to Mrs. Havel.  She used these proceeds to pay for the Holly Hills property.  The Havels did not ask to split the proceeds of the sale

of the Tyler Street property into two separate checks.  The Havels did nothing to indicate that the proceeds of the sale were used to pay the individual debts of either spouse.

The Court finds that Mr. Havel transferred his interest in the proceeds from the sale of the Tyler Street property to Mrs. Havel. Further, the gift by Mr. Havel to Mrs. Havel of his interest in the proceeds from the sale of entireties property is not fraud as to the rights of the Banc of America Leasing because Banc of America Leasing was not prejudiced by a gift of property that is exempt from their claims.  <u>Oliver</u>, 204 Va. at 127.  That Mr. Havel gave Mrs. Havel his interest in the proceeds from the sale of the Tyler Street property, and that Mrs. Havel used these proceeds to purchase the Holly Hills property, without more, does not establish that there was an agreement or understanding to sever the entireties property.  <u>Id.</u>

Banc of America Leasing has failed to demonstrate why <u>Oliver</u> and its progeny, discussed <u>supra</u>, are not applicable.  Further, the Court finds that Banc of America Leasing suggests too narrow a reading of Va. Code Ann. § 55-81.  Banc of America Leasing's arguments, (1) that Mr. Havel's transfer of his one-half interest in the proceeds from the sale of the Tyler Street property to Mrs. Havel is void as to Banc of America Leasing because of the strict liability established by Va. Code Ann. § 55-81, and (2) that the "no harm, no foul" defense is not a defense under Va. Code Ann. §

55-81, are not persuasive.  To accept these arguments would require the Court to construe Va. Code Ann. § 55-81 to override the existing common law in Virginia as it relates to tenants by the entirety under Va. Code Ann. § 55-20.2.   The common law of Virginia, as it interprets Va. Code Ann. § 55-20.2, makes it clear that property held by husband and wife as tenants by the entireties can be jointly conveyed by the husband and wife to one spouse or the other, free from liens or claims of creditors.  Vasilion, 192 Va. at 743.  Therefore, the Court finds that there is no evidence in the instant case showing an agreement or understanding by the Havels to sever their entireties tenancy.[21]

Banc of America Leasing has failed to set forth sufficient

---

[21]Banc of America Leasing also claimed that because it seeks the equitable remedy of a lien on Mr. Havel's one-half interest in the proceeds from the sale of the Tyler Street property that went to the purchase of the Holly Hills property, the instant case is distinguishable from Oliver, which dealt with a motion for judgment as a matter of law.  Although Oliver did not specifically address whether a claim could be made against the property that Mrs. Oliver purchased with the proceeds she received from Mr. Oliver's transfer of his entireties interest, Oliver, and the cases which follow its reasoning, stand for the proposition that the entireties property does not lose its character absent an agreement or understanding to the contrary.  Oliver, 204 Va. at 127.  In McCullen, the court noted that in Oliver "the facts that the proceeds only went to [Mrs. Oliver] and that [Mrs. Oliver] used the proceeds to buy land deeded only to her did not evidence an agreement or understanding to sever the entireties tenancy."  McCullen, 244 B.R. at 78. Further, as noted in Oliver itself, "creditors are not prejudiced by a gift of property which is exempt from their claims."  Oliver, 204 Va. at 127.  Finally, as mentioned in Vasilion, "there is no reason why [property held by husband and wife as tenants by the entireties] cannot be . . . [jointly] conveyed by the husband and wife to [one spouse or the other, free from liens or claims of creditors]."  Vasilion, 192 Va. at 743.

facts to establish that Mr. Havel destroyed the entireties character of the proceeds from the sale of the Tyler Street property and therefore made vulnerable his one-half interest in these proceeds to Banc of America Leasing. Accordingly, this Court FINDS that Banc of America Leasing is not entitled to a lien on Mr. Havel's one-half interest in the proceeds, and the Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment.

**VIII. <u>ORDER</u>**

For the foregoing reasons, the Motion for Summary Judgment submitted by Defendants Richard J. Havel and Diana M. Havel is GRANTED, and the Motion for Summary Judgment submitted by Banc of America Leasing & Capital, LLC is DENIED.

The Clerk shall mail a copy of this Order to all counsel of record.

Entered on September 29, 2006

_____/s/_____

F. Bradford Stillman
United States Magistrate Judge
